IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


JAMES GROSE,                 )
                                    )
                                    )
               Plaintiff,        )
                                    )
               v.             )     1:11CV634
                                    )
CAROLYN W. COLVIN,[1]     )
Commissioner of Social Security,   )
                                    )
               Defendant.    )


## <u>MEMORANDUM OPINION AND RECOMMENDATION<br>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff James Grose ("Plaintiff") brought this action pursuant to Section 205(g) of the

Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision

of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under

Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for

judgment, and the administrative record has been certified to the Court for review.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on November 27, 2007, alleging a disability onset date of April 17, 2007. (Tr. at 105-112.)[2]  His application was denied initially (Tr. at 56, 58-61) and upon reconsideration (Tr. at 57, 65-72). Thereafter, he requested a hearing de novo before an Administrative Law Judge ("ALJ").  (Tr. at 73-74.)  Plaintiff, along with his attorney, attended the subsequent hearing on February 16, 2010. (Tr. at 31.)

At the hearing, Plaintiff alleged two distinct periods of disability, the first from his alleged onset date until February 13, 2009, and the second from August 2009, through the date of the hearing.   (Tr. at 31, 46-47.) From February 14, 2009 until August of that year, Plaintiff performed a temporary job as a forklift operator which qualified as substantial gainful activity and rendered him ineligible for DIB.  (Tr. at 34, 47-49.)[3]

The ALJ ultimately determined that Plaintiff's back impairment met the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(C) ("Listing 1.04(C)") throughout his first alleged period of disability.  (Tr. at 31, 36.)  However, he determined that, "[o]n February 14, 2009, medical improvement occurred that is related to the ability to work, and [Plaintiff] has been able to perform substantial gainful activity from that date through the date of this

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #10].

[3] Earnings for Social Security purposes are determined by quarter rather than from the actual dates of employment.  Therefore, in the present case, the ALJ correctly noted that Plaintiff's earnings met the criteria for substantial gainful activity in the second and third quarters of 2009, i.e., April 1st through September 30th.

decision." (Tr. at 31.)  The ALJ therefore concluded that Plaintiff's disability ended on February

14, 2009.  (Tr. at 31, 40-41.)

As of February 14, 2009, the ALJ found that Plaintiff:

has had the residual functional capacity to perform medium work as defined in
20 CFR 404.1567(c) except that he is limited to work requiring no more than
occasional stooping, frequent, but not constant climbing, balancing, kneeling,
crouching, and crawling, and which avoids concentrated exposure to heights and
hazardous machinery.

(Tr. at 38.)   The ALJ determined that the demands of Plaintiff's past relevant work exceeded

the above residual functional capacity ("RFC").   However, the ALJ then considered Plaintiff's

age, education, work experience, and RFC in conjunction with the Medical-Vocational

Guidelines ("the grids") contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2,

and found that Plaintiff could perform other jobs that exist in significant numbers in the national

economy.   Accordingly, he concluded that Plaintiff was not under a "disability," as defined in

the Act, from his alleged onset date through the date last insured.  (Tr. at 39-41.)  On June 14,

2011, the Appeals Council denied Plaintiff's request for review of the decision, thereby making

the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at

1-4.)

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of

social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, the

scope of review of such a decision is "extremely limited."  Frady v. Harris, 646 F.2d 143, 144

(4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[4] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[the claimant] remains able to work other jobs available in the community," the claimant

qualifies as disabled.  Hines, 453 F.3d at 567.[6]

## III.   DISCUSSION

The issues in the present case relate solely to Plaintiff's second alleged period of disability,

which began on October 1, 2009.  Because the ALJ found that Plaintiff had not engaged in

"substantial gainful activity" since that date, Plaintiff met his burden at step one of the sequential

evaluation process.  At step two, the ALJ further determined that Plaintiff suffered from two

severe impairments: degenerative disc disease and obesity.  (Tr. at 35.)  Although the ALJ found

at step three that Plaintiff's back impairment had improved as of October 1, 2009, such that it

no longer met or equaled a disability listing, he determined that Plaintiff's impairments  limited

him to medium work with the following nonexertional limitations:   no more than occasional

stooping, frequent climbing, balancing, kneeling, crouching, and crawling, and no concentrated

exposure to heights and hazardous machinery.  (Tr. at 38.)  Due to these additional RFC

limitations, the ALJ determined that Plaintiff could not return to his past relevant work under

step four of the analysis.  (Tr. at 39-40.)  However, at step five, the ALJ considered Plaintiff's

age, education, work experience, and RFC in conjunction with the grids and found that Plaintiff

could perform other jobs that exist in significant numbers in the national economy.  (Tr. at 40.)

He therefore concluded at step five that Plaintiff was not disabled after February 13, 2009, the

date on which his first period of disability ended.  (Tr. at 41.)

---

[6] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

Plaintiff now argues that the ALJ erred in two respects. First, Plaintiff contends that substantial evidence fails to support the ALJ's finding that, as of February 14, 2009, he experienced medical improvement such that he was no longer disabled. Second, Plaintiff challenges the ALJ's reliance on the grids at step five of the sequential analysis, arguing that his nonexertional limitations rendered the grids inapplicable. Because the Court agrees that vocational expert testimony was required at step five, remand is appropriate. Specifically, the Court finds that the RFC's restriction to jobs "requiring no more than occasional stooping" substantially erodes the occupational base of medium work and places the step five determination in this case outside the scope of the grids. Therefore, the Court need not reachy the additional issue raised by Plaintiff.[7]

At step five of the sequential analysis, the government must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where a plaintiff suffers from purely exertional limitations,[8] the ALJ may apply the grids, contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish that claimant's vocational ability. See McLain v. Schweiker, 715 F.2d 866, 870 n.1 (4th Cir. 1983). If a plaintiff can perform the full

---

[7] Plaintiff raises multiple issues in this case, including that substantial evidence does not support the ALJ's finding of a "medium" RFC because that finding was based on opinions from Disability Determination Services reviewers that the ALJ had assigned little weight, and because the ALJ's decision failed to take into account evidence of Plaintiff's ongoing treatments for his back paid. Plaintiff aslo contends that the ALJ found that he was no longer disabled based on a return to work that should have been considered a trial work period. Finally, Plaintiff contends that the ALJ failed to include additional nonexertional impairments when assessing severity at step two and when formulating Plaintiff's RFC. In light of the Court's determination that remand is required, the parties may address these remaining issues further on remand, and the Court need not reach these additional issues.

[8] Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

range of work within one of the exertional categories defined by 20 C.F.R. § 404.1567, i.e., sedentary, light, medium, heavy, or very heavy, the Fourth Circuit has held that the grids adequately encompass the plaintiff's ability to perform basic work activities. See Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985). If, on the other hand, the claimant suffers from significant nonexertional limitations,[9] the grids are not determinative, and the ALJ must consider vocational expert testimony. McLain, 715 F.2d at 870 n.1. However, "certain additional nonexertional limitations may have very little effect on the range of work remaining that an individual can perform, . . . because relatively few jobs in the national economy require these skills" at the given exertional level. Sherby v. Astrue, 767 F. Supp. 2d 592, 597 (D.S.C. 2010).

Where, as here, an RFC contains a combination of exertional and nonexertional limitations, Social Security Rulings ("SSRs") 83-14 and 85-15 provide guidance in evaluating when additional limitations have little or no effect on the occupational base in question. In the present case, these rulings clearly indicate that the limitation to occasional, i.e., less than one-third of the time, stooping posited by the ALJ significantly erodes the occupational base of medium work. Ruling 85-15 provides that, "because of the lifting required for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base." 1985 WL 56857, at *7. Similarly, Ruling 83-14 states that, "to perform the full range of medium work as defined, a person must be able to do both frequent stooping and frequent crouching." 1983 WL 31254, at * 5. The latter ruling further notes that "any

---

[9] Nonexertional limitations affect a claimant's ability to meet the other demands of job and include mental limitations, pain limitations, and physical limitations not included in the seven strength demands.

limitation of these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found capable of medium work." Id. Here, despite citing SSR 85-15 in his decision, the ALJ, without explanation, concluded that none of Plaintiff's limitations, "singly or in combination, cause a significant erosion of the unskilled occupational base of jobs available to the claimant." (Tr. at 40.) Because the ALJ required, but did not employ, the assistance of a vocational expert to clarify the impact of Plaintiff's nonexertional limitations on his ability to work, substantial evidence fails to support the ALJ's decision at step five of the sequential analysis.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #16] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #13] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 18th day of August, 2014.

　　　　　　　　　　　　　　　　　　/s/ Joi Elizabeth Peake
　　　　　　　　　　　　　　　　United States Magistrate Judge